UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| CAROLYN D. SUTER, ) | |
| Plaintiff, ) | Civil Action No. 3:16cv00006 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **& ORDER** |
| METROPOLITAN LIFE ) | |
| INSURANCE COMPANY, ) | By: Joel C. Hoppe |
| Defendant. ) | United States Magistrate Judge |

This matter is before the Court for resolution of motions regarding the permissibility and scope of discovery. On April 11, 2016, Defendant Metropolitan Life Insurance Company ("MetLife") moved to modify the Court's Pretrial Order, ECF No. 11, and to hold a scheduling conference. ECF No. 12. In its motion, MetLife notified the Court that the parties disagreed as to whether the case could be resolved by review of only the Administrative Record, ECF No. 8, or whether additional discovery outside of the Administrative Record should be permitted. Following a scheduling conference call held on April 13, the Court took MetLife's motion under advisement and ordered the parties to submit briefing on the permissible scope of discovery. ECF No. 15. The parties each submitted opening and response briefs, ECF Nos. 16, 18–20, and Plaintiff Carolyn D. Suter moved to conduct discovery outside of the Administrative Record, ECF No. 17.

I. Facts and Procedural History

This case concerns Suter's claim for coverage under an insurance policy that is governed by the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Through Suter's employment with the General Electric Company ("GE"), her husband was insured under GE's Dependent Accidental Death & Dismemberment Insurance

("the Plan"), with Suter the named beneficiary under her husband's policy. Compl. ¶¶ 5–6, ECF No. 1. Benefits payable under the Plan are funded by a group policy issued by MetLife to GE, and MetLife administers claims under the Plan in accordance with ERISA. Answer ¶¶ 1, 6. On January 21, 2015, Suter's husband died after sustaining injuries in a fall two days earlier. Compl. ¶ 7. On March 3, 2015, Suter presented MetLife with a claim for benefits payable to her under the Plan as a result of her husband's death. *Id.* ¶ 8. MetLife denied Suter's claim initially and on appeal after finding that Mr. Suter's death was not covered under the terms of the Plan, citing language in the GE employee benefits handbook ("the Handbook"). *Id.* ¶¶ 8, 10–12. Specifically, MetLife considered two provisions in the Handbook: Section 1.1.5, which states that "death benefits are paid if you die from an injury within 180 days of the accident that caused the injury, or within 3 years of the accident if your death is solely and directly a result of the accident," and Section 1.1.6, which states that "[b]enefits under [the Plan] are not paid for losses contributed or caused by: . . . [d]isease or medical or surgical treatment of such disease . . . [p]hysical or mental impairment or medical or surgical treatment of such impairment." Administrative Record ("R.") 112–13. MetLife observed that Mr. Suter's death certificate listed cardiac decompensation, hip fracture, and humerus fracture as the cause of death and noted that congestive heart failure and kidney injury contributed to his death. *Id.* at 113. MetLife determined that Mr. Suter's death was not covered because it "was contributed to by existing medical conditions and is not considered the direct and sole result of an accidental injury." *Id.*

Suter commenced this action on January 21, 2016, asserting claims for recovery of Plan benefits and breach of fiduciary duty, as well as seeking attorney's fees, costs, and expenses.[1] *Id.*

---

[1] ERISA recognizes both of Suter's claims, 29 U.S.C. § 1132(a)(1)(B), (a)(3), as well as her request for attorney's fees and costs, *id.* § 1132(g)(1).

¶¶ 17–32. MetLife filed its Answer on February 19, asserting nine affirmative defenses[2] in addition to denying Suter's claims. Answer 4–7. The parties had a Rule 26(f) conference and on March 24 submitted a joint report of their planning meeting. In their report, the parties acknowledged their disagreement over the availability of traditional discovery and, in the event the Court permits discovery, the potential pre-trial deadlines. ECF No. 9. The Court entered a Pretrial Order on March 30, setting forth a schedule and provisions for discovery. ECF No. 11, at 1, 4. On April 7, Suter sent interrogatories and requests for production to MetLife. Apps. to Pl. Br., ECF Nos. 18-1 to 18-3. The parties then filed the instant motions and submitted briefing on the scope and propriety of discovery. ECF Nos. 12, 16–20.

## II. Discussion

A.   *Improper Denial of Benefits*

In a claim for review of an ERISA plan administrator's coverage determination, a court applies an abuse of discretion standard of review if "the benefit plan at issue vests the administrator with discretionary authority." *Helton v. AT&T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013). Here, the parties agree that an abuse of discretion standard is appropriate.[3] Pl. Br. 5, ECF

---

[2] As affirmative defenses, MetLife asserts that (1) Suter's complaint fails to state a claim; (2) any potential remedies are limited to those offered by ERISA; (3) under relevant case law, Suter may not simultaneously maintain both her claim for recovery of benefits and her claim for breach of fiduciary duty; (4) Suter failed to meet the conditions necessary to be entitled to benefits; (5) MetLife fully performed its duties and denied Suter's claim for benefits in accordance with the Plan, which estops Suter from asserting any cause of action against MetLife; (6) MetLife's determinations regarding Suter's claim were reasonable, made in good faith, and a lawful exercise of its discretion; (7) if the Court finds that MetLife erred in its determination, it should remand for further administrative action rather than deciding that Suter is entitled to benefits; (8) any liability is subject to Plan documents; and (9) MetLife may amend its Answer after obtaining knowledge of new information. Answer 6–7.

[3] The Administrative Record includes the Handbook, R. 1–74, but does not include any other Plan documents. The Handbook does not state whether MetLife is vested with discretion in administering the Plan, but for purposes of this Order I will proceed under the parties' assumption that an abuse of discretion standard applies.

3

No. 18. Under this standard of review, a court generally will not consider evidence outside of the administrative record prepared by the plan administrator. *Helton*, 709 F.3d at 352. This is not an absolute bar, however. In *Helton*, the Fourth Circuit determined that evidence extrinsic to the administrative record may be considered by the reviewing court if that evidence (1) is necessary to assess the factors that are relevant to whether a plan administrator abused its discretion, as set out in *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000), and (2) was known to the plan administrator at the time it rendered its benefits determination. *Helton*, 709 F.3d at 352–56.

In *Booth*, the Fourth Circuit stated that a court's review of an ERISA coverage determination for abuse of discretion requires evaluation of the following nonexclusive factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

201 F.3d at 342–43. As the *Helton* court observed, extrinsic evidence may be necessary to evaluate these factors, particularly the third, fourth, and eighth factors. 709 F.3d at 354. Courts should consider "whether a review of that evidence is required in order to 'fill in gaps in the administrative record'" as to a particular *Booth* factor. *Lockard v. Unum Life Ins. Co. of Am.*, No. 3:15cv21, 2015 WL 4730089, at *3 (N.D.W. Va. Aug. 10, 2015) (quoting *Yelton v. ScanSource, Inc.*, 983 F. Supp. 2d 683, 698 (D.S.C. 2013)).

Here, Suter contends that her discovery requests are related to the third, fourth, and fifth *Booth* factors. Specifically, she seeks documents relating to previous claims that MetLife has

4

received for Dependent Accidental Death and Dismemberment Insurance coverage or for claims in which MetLife relied on the relevant provisions of the Handbook, as well as all documents relating to the training of MetLife personnel with regard to such claims. Suter argues that these documents are necessary to assess whether MetLife has applied the relevant provisions consistently in previous claims, whether there are discrepancies between the training of claims evaluators and their decisionmaking in practice, and whether MetLife's decision in her case was reasonable. Pl. Br. 7.

Suter's argument is insufficient as to her discovery requests regarding the training of MetLife employees. She has not explained how the requested information is necessary for the Court to evaluate any of the *Booth* factors or identified any gap in the record that this information would fill. Instead, Suter appears to seek "*carte blanche* to conduct discovery" on the question of employee training, which would "convert[] the emphasis of this litigation from the reasonableness of an administrator's claim decision to an 'exhaustive scrutiny of . . . the administrator's business practices.'" *Lockard*, 2015 WL 4730089, at *4 (quoting *Clark v. Unum Life Ins. Co. of Am.*, 799 F. Supp. 2d 527, 533 (D. Md. 2011)). Discovery should not be permitted where, as here, the information is speculative and, in any event, does not appear to be necessary to resolution of the issues in the case.

Suter has, however, shown that discovery may be necessary to fill gaps in the record as to previous interpretations of the relevant Plan provisions. As is evident from her Complaint, Suter's primary argument in this matter focuses on a contested interpretation of language in the Handbook. *See* Compl. ¶¶ 8–14 (disputing MetLife's use of a "sole and direct" causation standard in finding that the injuries Suter's husband sustained in his accident were not the cause

5

of death). The Administrative Record prepared by MetLife provides little explanation of how it interpreted Sections 1.1.5 and 1.1.6 and why it applied the standard it used in Suter's benefits determination. *See* R. 112–13, 235–36. Information regarding MetLife's application of this standard in prior cases would therefore be necessary and highly relevant as to whether its coverage determination was reasonable. *See Helton*, 709 F.3d at 354. Suter should therefore be permitted to conduct discovery relating to the fourth *Booth* factor.[4]

      Suter also seeks production of any materials MetLife may have considered for her claim that were not included in the Administrative Record. Pl. Br. 7–8. MetLife objects to this request, arguing that "it presumes—without any basis—that MetLife has misrepresented to the Court that the documents it has already filed constitute the full Administrative Record in this case," and claiming that the Court can conduct an abuse of discretion review without further enhancing the record. Def. Resp. Br. 5–6. MetLife's protest goes too far. Suter's discovery request is addressed to the third *Booth* factor, and it seeks only information that Met Life may have considered in adjudicating her claim. Nonetheless, Suter has not identified any information that either was left out of the Administrative Record or that she in good faith believes was left out. *Cf. Jenkins v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers Local No. 79 Pension Fund*, No. 2:14cv526, 2015 U.S. Dist. LEXIS 35146, at *28 (E.D. Va. Mar. 20, 2015) (allowing discovery relevant to the third *Booth* factor where plaintiff presented letter that he had sent to the plan trustee that was not included in the administrative record). Without identifying some deficiency in the Administrative Record, Suter has not demonstrated that discovery in this area is

---

[4] I do not rule at this time on whether Suter's proposed interrogatories and requests for production are otherwise proper under the Federal Rules of Civil Procedure. That issue is not presently before me.

6

necessary. Accordingly, Suter's request for discovery into this area will be denied without prejudice.

B.     Other Discovery Matters

Suter has also made other miscellaneous discovery requests that MetLife opposes. First, MetLife argues that Suter should not be allowed to conduct any additional discovery in relation to her claim for breach of fiduciary duty. The Court agrees with this argument. As MetLife notes, Suter's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) is functionally the same as her claim for benefits under § 1132(a)(1)(B) because, so far as the Court can tell, the only fiduciary breach she has alleged is that MetLife improperly denied her claim. *See Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 104–07 (4th Cir. 2006) (finding that a claimant's cause of action for breach of fiduciary duty was redundant of her claim for improper denial of benefits); *cf. Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (allowing a remedy under § 1132(a)(3) where recovery under § 1132(a)(1)(B) was unavailable). Nonetheless, this issue, at least as it concerns the scope of discovery, is essentially a red herring as neither party argues that the evidence potentially relevant to this claim is any broader than it is for Suter's first claim.

Suter has not shown that additional discovery is necessary with regard to MetLife's affirmative defenses or potential experts. MetLife has not indicated that it intends to introduce extrinsic evidence to support its affirmative defenses, and they all appear to be firmly grounded in the Administrative Record. Additionally, MetLife denies that it currently seeks to involve expert witnesses. Def. Resp. Br. 6–8. Suter's motion therefore will be denied to the extent she seeks discovery on these issues. The parties may revisit this question should MetLife indicate

7

that it will introduce extrinsic evidence in support of its affirmative defenses or bring in expert witnesses.

For the reasons set forth herein, Suter's motion to conduct discovery beyond the Administrative Record, ECF No. 17, is hereby GRANTED in part and DENIED in part. Suter's request to conduct discovery as to the third *Booth* factor is denied without prejudice. The parties may conduct discovery as to the fourth *Booth* factor. The Court will continue to hold MetLife's motion to modify the Pretrial Order, ECF No. 12, under advisement, pending a scheduling conference.

It is so ORDERED.

The Clerk shall send a copy of this Order to the parties.

ENTER: June 9, 2016

Joel C. Hoppe
U.S. Magistrate Judge

8